## UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| GONZALEZ EQUITIES, LTD., | § § § | |
| *Plaintiff,* | § § | |
| v. | § § | Civil Action No.  SA-14-CV-1087-XR |
| SELECT PORTFOLIO SERVICING, INC., AND U.S. BANK NATIONAL ASSOCIATION AS TRUSTEE, SUCCESSOR IN INTEREST TO WACHOVIA BANK, NATIONAL ASSOCIATION (FORMERLY KNOWN AS FIRST UNION NATIONAL BANK) AS TRUSTEE FOR LONG BEACH MORTGAGE LOAN TRUST 2001-4, | § § § § § § § § § § § § | |
| *Defendants.* | § § | |

## ORDER

On this day the Court considered Defendants' Motion for Summary Judgment (docket no. 9).  For the following reasons, the Court GRANTS the motion.

## I.        BACKGROUND

Plaintiff Gonzalez Equities, Ltd., ("Gonzalez") purchased a property located at 5231 Casbury, San Antonio, Texas 78218 (the "Property") pursuant to a sheriff's deed.  Docket no. 1-1 at ¶ 8.  Gonzalez brought this lawsuit against Defendants Select Portfolio Servicing, Inc., ("Select Portfolio") and U.S. Bank National Association ("U.S. Bank") (collectively, "Defendants") on December 1, 2014, in the 224th Judicial District of Bexar County, Texas, to stop a foreclosure sale scheduled for December 2, 2014.  *See id*. at ¶ 9.  Defendants claim to hold a valid mortgage against the Property that is senior to Gonzalez's interest.  *See* docket no. 9 at 1.

It appears the Property's journey to this Court began on September 25, 2001, when Timothy and Barbara Gereb[1] purchased the Property by securing a loan for $176,800 with a deed of trust (the "Deed of Trust") in favor of Long Beach Mortgage Company.[2]  Docket no. 9 at 3; docket no. 9-2.   JPMorgan Chase Bank, National Association, successor in interest to Washington Mutual Bank, successor in interest to Long Beach, assigned the Deed of Trust to U.S. Bank by an assignment executed on March 8, 2012.  Docket no. 9-3.

The Property is subject to several restrictions and covenants under the Declaration of Protective Covenants, Conditions and Restrictions (docket no. 9-4) for Oakland Heights Homeowners' Association (the "HOA"), and the HOA may assess a lien on the Property for unpaid HOA assessments, but that lien is junior to any existing mortgage.  *See* docket no. 9-4. at §§ 5.1 and 5.5.  The Gerebs defaulted on their HOA payments. *See* docket no. 9-5 (a "notice of assessment lien" indicating the Property is indebted to the HOA).   Apparently, the HOA foreclosed its lien, divesting its interest in the property via sheriff's deed (docket no. 9-6) to Gonzalez on September 11, 2014.  Gonzalez allegedly purchased the Property on October 2, 2014.  Docket no. 1-1 at ¶ 8.

On October 29, 2014, Gonzalez requested from Select Portfolio "a payoff [amount] and was told to provide all the documentation regarding ownership" of the Property.  Docket no. 1-1 at ¶ 8.  "That same day [Gonzalez] sent a letter along with all the documentation showing proof of ownership," and followed up twelve days later without ever receiving a payoff amount.  *Id*. Gonzalez alleges it needed "the payoff amount of the note in order to resolve the outstanding debt." *Id*. at ¶ 9.

---

[1] The couple are not parties to this lawsuit.
[2] The state court petition does not indicate the circumstances under which Gonzalez acquired its interest in the Property.  *See* docket no. 1-1.

The state court petition alleges: 1) "violations of the applicable mortgage contract between [Gonzalez] and Defendants;" 2) Gonzalez is "seeking a determination of the actual amounts owed under the note;" 3) violation of due process; and 4) temporary restraining order and preliminary injunction to stop a foreclosure sale.  Docket no. 1-1 at ¶¶ 9-14.

On December 1, the same day the lawsuit was filed, the state court issued a temporary restraining order blocking the foreclosure sale.  *See* docket no. 1-1. Defendants removed this case on December 12, properly invoking this Court's diversity jurisdiction.[3]  On March 4, 2015, Defendants, through counsel, provided Gonzalez a payoff amount: $262,092.60.  *See* docket no. 9-7.  Defendants informed Gonzalez that it had until March 16, 2015 to tender the full amount or, if it could not, dismiss this lawsuit.  *Id*.  Defendants apparently received no response from Gonzalez.  However, Gonzalez provides an affidavit from David A. Gonzalez refuting the accuracy of the $262,092.60 payoff amount, as Defendants told him they received a maximum bid of $201,000 at the foreclosure sale and the prior owner made payments for 13 years, so the quoted $262,092.60 is "quite a bit of discrepancy."  Docket no. 18-1 at 2.

Defendants filed this motion for summary judgment on April 20, 2015.  Docket no. 9. Gonzalez filed an amended complaint on May 1, 2015 (docket no. 13) that alleged and argued that it was entitled to a payoff amount from Defendants prior to foreclosure under the Truth in Lending Act (TILA).  However, the Court struck that amended complaint on May 4 for violating Federal Rule of Civil Procedure 15(a) as Gonzalez neither had written permission from Defendants to amend its complaint, nor did it move the Court for leave to amend.  *See* docket no. 14 at 1.  The Court stated, "The amended complaint explained the legal basis for its argument

---

[3] *See* docket nos. 1 and 16 (Defendants asserting that their citizenships for diversity purposes are in Utah and Ohio while Gonzalez is a Texas limited partnership whose partners are all citizens of Texas, demonstrating complete diversity, and attaching evidence showing a property value of $272,190 to satisfy the amount in controversy); *see also Wells Fargo Bank, N.A. v. Am. Gen. Life Ins. Co.*, 670 F. Supp. 2d 555, 561 (N.D. Tex. 2009) ("[T]he citizenship of a trust, for diversity jurisdiction purposes, is determined by the citizenship of its trustee.").

about payoff amounts.  If Plaintiff intended the amended complaint to stand as argument against Defendants' pending motion for summary judgment, Plaintiff should file it or a similar document as a response to the motion for summary judgment, not an amended pleading."  *Id.* at 2. Gonzalez filed a response on May 21, 2015.[4]

## II.    LEGAL STANDARD

A court shall grant summary judgment if the movant shows that there is no genuine issue of any material fact and the movant is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(a).  To establish that there is no genuine dispute over any material fact, the movant must submit evidence that negates the existence of some material element of the nonmoving party's claim or defense.  *Lavespere v. Niagra Machine & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir. 1990), *cert. denied*, 510 U.S. 859 (1993).  If the crucial issue is one for which the nonmoving party will bear the burden of proof at trial, the movant can merely point out that the evidence in the record is insufficient to support an essential element of the nonmovant's claim or defense.  *Id.* Once the movant carries its initial burden, the burden shifts to the nonmovant to show that summary judgment is inappropriate.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Fields v. City of South Houston*, 922 F.2d 1183, 1187 (5th Cir. 1991).

In order for a court to conclude that there are no genuine issues of material fact, the court must be satisfied that no reasonable trier of fact could have found for the nonmovant, or, put differently, that the evidence favoring the nonmovant is insufficient to enable a reasonable jury to return a verdict for the nonmovant.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n.4 (1986); *Lavespere,* 910 F.2d at 178.  In making this determination, the court should review

---

[4] The United States District Court for the Western District of Texas Local Rule CV-7(e)(2) requires a response on a dispositive motion within 14 days.  Defendants filed their motion for summary judgment on April 20, 2015. Gonzales's response is untimely.  More than 30 days have passed since Defendants filed this motion, and 20 days have passed since the Court struck the "amended complaint."  The Court could strike or ignore the response. Nevertheless, the Court will consider the arguments made in Gonzales's response in the interest of justice and because they do not change the outcome of the Court's decision on this motion.

all the evidence in the record, drawing all reasonable inferences in favor of the nonmovant and without making credibility determinations or weighing the evidence. *Lytle v. Household Mfg., Inc.*, 494 U.S. 545, 554–555 (1990). The court also considers "evidence supporting the moving party that is uncontradicted and unimpeached." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000).

### III.   ANALYSIS

Construed somewhat liberally, the state court petition alleges four "causes of action" relating to the absent payoff amount: 1) breach of the Deed of Trust; 2) violation of the Texas Property Code; 3) violation of due process; and 4) temporary restraining order and preliminary injunction to stop a foreclosure sale. Docket no. 1-1 at ¶¶ 9-14. The stricken amended complaint and Gonzalez's response to this motion argue the failure to provide a payoff amount violated TILA and "Regulation Z," specifically 12 C.F.R. § 1026.36(c). Docket no. 13. Gonzalez also argues it "was told at the foreclosure sale by the Defendants trustee that the price was $176,800.00 and the payoff amount was around $200,000.00 and the number provided in the Defendants correspondence is $262,092.60. Therefore, the formal payoff statement has still not been provided." Docket no. 18 at 2. Defendants move for summary judgment against all of Gonzalez's claims. The Court will grant summary judgment on all claims.

### A. Payoff Amount

Gonzalez alleges it contacted Select Portfolio on October 29, 2014, requesting a payoff amount on the note, but after providing the paperwork it did not learn the amount. Docket no. 1-1 at ¶ 8. Gonzalez allegedly called Select Portfolio twelve days later but still did not get a payoff amount. In the complaint, Gonzalez appears to maintain that by not providing it a payoff amount, Defendants violated due process, violated Texas law, and breached the Deed of Trust.

Gonzalez's response and stricken amended complaint allege this also violated TILA and 12 C.F.R. 1026.36(c).

First, Defendants cannot breach due process because they are not state actors or acting under color of law.[5]  The Fourteenth Amendment provides, "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."   U.S. CONST. AMEND. XIV.  Because the Amendment is directed at the States, it can be violated only by conduct that may be fairly characterized as "state action."  *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982).  "Title 42 U.S.C. § 1983 provides a remedy for deprivations of rights secured by the Constitution and laws of the United States when that deprivation takes place 'under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . .'"  *Id.*  (quoting Title 42 U.S.C. § 1983).  There is no evidence Defendants are state actors or acting under color of state law.  The Court therefore grants summary judgment for Defendants on the due process claim.  *See Caleb v. Grier*, 598 F. App'x 227 (5th Cir. 2015) (per curiam).

Second, Gonzalez has not alleged or provided any evidence that it was entitled to receive a payoff amount or any other notice sufficient to survive summary judgment.  *Preiss v. Deutsche Bank Nat. Trust Co.*, No. 5:14-CV-00395-DAE, 2014 WL 3952820, at *2 (W.D. Tex. Aug. 13, 2014).  Moreover, Gonzalez is neither a party to the Deed of Trust nor has it properly assumed the position of the borrower after purchasing an interest in the Property from the HOA.  Docket no. 9-2; s*ee Am. Sav. & Loan Ass'n of Houston v. Musick*, 531 S.W.2d 581, 588 (Tex. 1975) (describing how a party with an interest in a property would properly assume the borrower's

---

[5] Gonzalez appeared to acknowledge this problem in its amended complaint when it dropped the "due process" heading.

position in order to retain rights under a deed of trust).  As a stranger to the transaction, Gonzalez

had no right to a payoff amount under the Deed of Trust or Texas Property Code Section 51.002.

*See Sanders v. Shelton*, 970 S.W.2d 721, 726-27 (Tex. App.—Austin 1998, no pet.) (a different

debtor than the original mortgagor with an interest in the property "as a stranger to the

underlying transaction had no such right").  Defendants thus did not violate the Deed of Trust or

Texas law by not providing a payoff amount to Gonzalez.

Further, Gonzalez bought a junior lien from the HOA.  That junior lien was purchased

subject to senior liens on the Property, including Defendants' mortgage.  *See* docket no. 9-3 §§

5.1 and 5.5 (showing the HOA's lien was subject to senior liens); docket no. 9-6 (showing

Gonzalez purchasing HOA's junior lien); *DTND Sierra Invs., LLC v. Bank of Am., N.A.*, 871 F.

Supp. 2d 567, 573 (W.D. Tex. 2012) ("Under Texas common law, foreclosure does not terminate

interests in the foreclosed real estate that are senior to the lien being foreclosed, and the

successful bidder at a junior lien foreclosure takes title subject to the prior liens.") (citing

*Conversion Properties, LLC v. Kessler*, 994 S.W.2d 810, 813 (Tex. App. —Dallas 1999, pet.

denied)).  When senior lienholders foreclose their interest in a property it extinguishes any junior

lienholder's interest; the junior lienholder's rights are subjugated to the senior's.  *See Conseco*

*Fin. Servicing Corp. v. J & J Mobile Homes*, Inc., 120 S.W.3d 878, 883 (Tex. App.—Ft. Worth

2003, pet. denied)  ("Following the valid foreclosure of a senior lien, junior liens, if not satisfied

from the proceeds of sale, are extinguished.") (citing *Nat'l W. Life Ins. Co. v. Acreman*, 425

S.W.2d 815, 817 (Tex. 1968)).

This case is almost identical to *402 Lone Star Prop., LLC v. Bank of Am., N.A.*, where a

property owner holding a junior lien sought to rescind a foreclosure after it did not receive a

payoff amount.  No. 03-13-00322-CV, 2014 WL 4058715, at *2 (Tex. App.—Austin Aug. 12,

2014) (unreported).  The court reasoned that nothing in the Property Code entitled the plaintiff to a payoff amount prior to foreclosure, that the plaintiff was not a party to the deed of trust, and thus was not entitled to notice of foreclosure and opportunity to cure.  *Id*. at *3 (holding the plaintiff "was not a borrower or party under the Deed of Trust . . . and [plaintiff] was, consequently, not entitled to notice of foreclosure, nor of information to protect its property interest . . . [*See*] Tex. R. Civ. P. 166a(c); *DTND Sierra Invs. LLC v. Bank of Am., N.A.*, 871 F.Supp.2d 567, 579 (W.D. Tex. 2012)") (some internal citations omitted).

Finally, even if failing to provide a payoff amount to Gonzalez did violate the law or breach the Deed of Trust, Defendants have now provided a payoff amount of $262,092.60 to Gonzalez.  *See* docket no. 9-7.  Gonzalez has had more than 20 days to pay the amount and apparently has not paid that amount or demonstrated it is prepared to pay it.  Gonzalez argues the number it was provided is too high, so "there still remains a dispute as to the actual amounts owed under the note."  Docket no. 18 at 2.  Gonzalez argues, because the number Defendants' counsel provided is different than "around $200,000" it was allegedly quoted at the foreclosure sale, it has not been provided a "formal payoff amount."  *Id*. at 4.  Gonzalez supports its argument with affidavits from an employee stating Defendants received a maximum bid of $201,000 at the foreclosure sale and the prior owner made payments for 13 years, so the quoted $262,092.60 is "quite a bit of discrepancy."  Docket no. 18-1 at 2.

First, Defendants provided a payoff amount.  Gonzalez provides no basis for questioning the propriety of the amount other than an unofficial, off-hand, inexact comment.  Gonzalez offers no evidence that $262,092.60 is incorrect other than pure conjecture that does not create an issue of fact.  Gonzalez argues it was not provided a proper accounting showing the basis of the payoff amount.  That is not enough, either.  Second, even if the payoff were somehow incorrect,

Gonzalez has not stated a proper cause of action it might be able to sustain against Defendants for making an incorrect or misleading statement characterizing the debt (i.e. Texas Debt Collection Practices Act §§ 392.304(a)(8) or (a)(19)).  Third, Gonzalez offers no law to support its argument that the letter from Defendants' counsel is not sufficient because it was somehow not a "formal" payoff amount.[6]  The Court finds no basis in law, either.

Gonzalez argues in its stricken amended complaint and its response that its "payoff amount" cause of action is a violation of "Truth in Lending [Act] and Regulation Z."  Docket no. 18 at ¶ 13.  Gonzalez argues

> 12 C.F.R. § 1026.36[(c)](3) states that 'In connection with a consumer credit transaction secured by a consumer's dwelling, a creditor, assignee or servicer, as applicable, must provide an accurate statement of the total outstanding balance that would be required to pay the consumer's obligation in full as of a specified date. The statement shall be sent within a reasonable time, but in no case more than seven business days, after receiving a written request **from the consumer or any person acting on behalf of the consumer**. When a creditor, assignee, or servicer, as applicable, is not able to provide the statement within seven business days of such a request because a loan is in bankruptcy or foreclosure, because the loan is a reverse mortgage or shared appreciation mortgage, or because of natural disasters or other similar circumstances, the payoff statement must be provided within a reasonable time.'

*Id.* at ¶ 13 (emphasis original).  Gonzalez argues the payoff amount was not given until after the foreclosure sale, which is not within a "reasonable time."  *Id.* at ¶ 14.

TILA and 12 C.F.R. § 1026.36(c) apply to "consumers."  Consumer means "a cardholder or natural person to whom consumer credit is offered or extended.  However, for purposes of rescission under §§ 1026.15 and 1026.23, the term also includes a natural person in whose principal dwelling a security interest is or will be retained or acquired, if that person's ownership

---

[6] Ignoring for a moment that Gonzalez offers no explanation for why an official letter from Defendants' counsel declaring a payoff amount is not "formal."

interest in the dwelling is or will be subject to the security interest."  12 C.F.R. § 1026.2(a)(11).

Cardholder means "a natural person to whom a credit card is issued for consumer credit

purposes, or a natural person who has agreed with the card issuer to pay consumer credit

obligations arising from the issuance of a credit card to another natural person."  *Id*. at (a)(8).  12

C.F.R. § 1026.36(b) provides paragraph (c)(3) "applies to a consumer credit transaction secured

by a dwelling."  Consumer credit means "credit offered or extended to a consumer primarily for

personal, family, or household purposes."  § 1026.2(a)(12).  Dwelling means "a residential

structure that contains one to four units, whether or not that structure is attached to real property.

The term includes an individual condominium unit, cooperative unit, mobile home, and trailer, if

it is used as a residence."  § 1026.2(a)(19).

Gonzalez is a limited partnership; not a natural person or a cardholder within the meaning

of the statute and its regulation.  Therefore, Gonzalez is not a consumer entitled to § 1026.36(c)

protection.  Thus, a "consumer" did not provide a written request to Defendants asking for an

accurate statement of the total outstanding balance here.  Neither did "any person acting on

behalf of [a] consumer" as there is no consumer present in the facts of this case; nor does this

case involve "consumer credit" because credit was not offered for "personal, family, or

household purposes" to Gonzalez.  Finally, again, even if Gonzalez was entitled to protection by

this section such that it could stop a foreclosure because it did not receive an accurate statement

of the total outstanding balance, Gonzalez has now been provided this information and failed to

act.  *See* docket no. 9-7.  Gonzalez's baseless dispute about the accuracy of the payoff amount is

not enough.

Nothing in state or federal law sustains Gonzalez's claims against Defendants relating to

failure to provide the junior lienholder a payoff amount.  Plus, Defendants have provided the

payoff amount and Gonzalez has not acted.  The Court therefore grants Defendants' motion for summary judgment on claims relating to the payoff amount, including violations of due process, TILA and the Texas Property Code, and breach of the Deed of Trust.

### B.  Injunctive Relief

Gonzalez also pled a cause of action for injunctive relief to enjoin Defendants from foreclosing the property.  Under Texas law, injunctive relief is an equitable remedy, not an independent cause of action.  *See, e.g.*, *Barcenas v. Fed. Home Loan Mortg. Corp.*, No. H–12–2466, 2013 WL 286250, at *9 (S.D. Tex. Jan. 24, 2013).  A court must dismiss claims for equitable relief where no underlying cause of action from the complaint survives.  *See, e.g.*, *Cook v. Wells Fargo Bank, N.A.*, Civ. A. No. 3:10–CV–0592–D, 2010 WL 2772445, *4 (E.D. Tex. Mar. 24, 2011) ("Under Texas law, a request for injunctive relief is not itself a cause of action but depends on an underlying cause of action.").  The Court granted summary judgment on all other causes of action in Gonzalez's complaint above.  The Court therefore must also dismiss Gonzalez's claim for injunctive relief because it is not an independent cause of action that can stand on its own and the other claims in the complaint were dismissed.  *See Lindsey v. Ocwen Loan Servicing, LLC*, 3:10-CV-967-L, 2011 WL 2550833, *6 (N.D. Tex. June 27, 2011).

### IV.    CONCLUSION

For all of the above reasons, the Court GRANTS Defendants' motion for summary judgment.  Docket no. 9.  Plaintiff shall take nothing by its claims and its claims are dismissed on the merits. Judgment in favor of Defendants shall issue separately according to Rule 58. Defendants are awarded costs and shall file a bill of costs pursuant to the local rules.

It is so ORDERED.

SIGNED this 26th day of May, 2015.

_____

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE