**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| GONZALEZ EQUITIES LTD., | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| v. | § | Civil Action No.  SA-14-CV-1087-XR |
| | § | |
| SELECT PORTFOLIO SERVICING, | § | |
| INC., AND U.S. BANK NATIONAL | § | |
| ASSOCIATION AS TRUSTEE, | § | |
| SUCCESSOR IN INTEREST TO | § | |
| WACHOVIA BANK, NATIONAL | § | |
| ASSOCIATION (FORMERLY KNOWN | § | |
| AS FIRST UNION NATIONAL BANK) AS | § | |
| TRUSTEE FOR LONG BEACH | § | |
| MORTGAGE LOAN TRUST 2001-4, | § | |
| | § | |
| *Defendants.* | § | |

## ORDER

On this day the Court considered Plaintiff's motion for reconsideration (docket no. 22) of the Court's previous Order (docket no. 19) granting Defendant's Motion for Summary Judgment (docket no. 9).  For the following reasons, the Court DENIES the motion for reconsideration.

## BACKGROUND

Plaintiff Gonzalez Equities, Ltd. ("Gonzalez") purchased a property located at 5231 Casbury, San Antonio, Texas 78218 (the "Property") pursuant to a sheriff's deed.  Docket no. 1-1 at ¶ 8.  Gonzalez brought a  lawsuit against Defendants Select Portfolio Servicing, Inc., "Select Portfolio") and U.S. Bank National Association ("U.S. Bank") (collectively, "Defendants") on December 1, 2014, in the 224th Judicial District of Bexar County, Texas, to stop a foreclosure sale scheduled for December 2, 2014.  *See id.* at ¶ 9.  Defendants claim to have held a valid mortgage against the Property that is senior to Gonzalez's interest.  Docket no. 9 at 1.

The Property's journey to this court began on September 25, 2001, when Timothy and Barbara Gereb[1] purchased the Property by securing a loan for $176,800 with a deed of trust (the "Deed of Trust") in favor of Long Beach Mortgage Company.[2]  Docket no. 9 at 3; docket no. 9-2.  JPMorgan Chase Bank, National Association, successor in interest to Washington Mutual Bank, successor in interest to Long Beach, assigned the Deed of Trust to U.S. Bank by an assignment executed on March 8, 2012.  Docket no. 9-3.

The Property is subject to several restrictions and covenants under the Declaration of Protective Covenants, Conditions and Restriction (docket no. 9-4) for Oakland Heights Homeowner's Association (the "HOA"), and the HOA may assess a lien on the Property for unpaid HOA assessments, but that lien is junior to any existing mortgage.  *See* docket no. 9-4 at §§ 5.1 and 5.5.  The Gerebs defaulted on their HOA payments.  *See* docket 9-5 (a "notice of assessment lien" indicating the Property is indebted to the HOA).  The HOA apparently foreclosed its lien, divesting its interest in the property via sheriff's deed (docket no. 9-6) to Gonzalez on September 11, 2014.  Gonzalez allegedly purchased the Property on October 2, 2014.  Docket no. 1-1 at 8.

On October 29, 2014, Gonzalez requested from Select Portfolio "a payoff [amount] and was told to provide all the documentation regarding ownership" of the Property. Docket no. 1-1 at 8.  "That same day [Gonzalez] sent a letter along with all the documentation showing proof of ownership," and followed up twelve days later without ever receiving a payoff amount.  *Id*. Gonzalez alleges it needed "the payoff amount of the note in order to resolve the outstanding debt." *Id*. at 9.

---

[1] Timothy and Barbara Gereb are not parties to this lawsuit.

[2] The state court petition does not indicate the circumstances under which Gonzalez acquired its interest in the Property.  *See* docket no. 1-1.

The state court petition alleged: (1) "violations of the applicable mortgage contract between [Gonzalez] and Defendants;" (2) Gonzalez sought "a determination of the actual amounts owed under the note;" (3) violation of due process; and (4) temporary restraining order and preliminary injunction to stop a foreclosure sale.  Docket no. 1-1 at ¶¶ 9-14.

On December 1, the same day the lawsuit was filed, the state court issued a temporary restraining order blocking the foreclosure sale.  *See* docket no.1-1.  Defendants removed this case on December 12, properly invoking this Court's diversity jurisdiction.  On March 4, 2015, Defendants, through counsel, provided Gonzalez a payoff amount: $262,092.60.  *See* docket no. 9-7.  Defendants informed Gonzalez that it had until March 16, 2015, to tender the full amount or, if it could not, dismiss this lawsuit.  *Id*.  Defendants apparently received no response from Gonzalez.  However, Gonzalez provides an affidavit from David A. Gonzalez refuting the accuracy of the $262,092.60 payoff amount, as Defendants told him they received a maximum bid of $201,000 at the foreclosure sale and the prior owner made payments for 13 years, so the quoted $262,092.60 was "quite a bit of discrepancy."  Docket no. 18-1 at 2.

Defendants filed a motion for summary judgment on April 20, 2015.  Docket no. 9. Gonzalez filed an amended complaint on May 1, 2015, (docket no. 13) that alleged and argued that it was entitled to a payoff amount from Defendants prior to foreclosure under the Truth in Lending Act (TILA).  However, the Court struck that amended complaint on May 4 for violating Federal Rule of Civil Procedure 15(a) as Gonzalez neither had written permission from Defendants to amend its complaint, nor did it move the Court for leave to amend.  *See* docket no. 14 at 1.  The Court stated, "The amended complaint explained the legal basis for its argument about payoff amounts.  If Plaintiff intended the amended complaint to stand as argument against Defendants' pending motion for summary judgment, Plaintiff should file it or a similar document

as a response to the motion for summary judgment, not an amended pleading." *Id.* at 2. Gonzalez filed a response on May 21, 2015.

Gonzalez eventually responded to the motion for summary judgment arguing the following: (1) the Defendants "violated the requirements of Truth in Lending and [12 C.F.R. § 1026.36(c)]" by not providing a payoff amount to Gonzalez within a "reasonable time," (2) Defendants failed to provide a payoff amount and "have only provided a letter with an arbitrary number," and (3) a dispute existed regarding "the actual amounts owed under the note." Docket no. 18 at 6-7.

On May 26, 2015, the Court entered its Order granting Defendants' Motion for Summary Judgment (the "Order"), which dismissed Plaintiff's claims on the merits. Docket no. 19. In the Order, the Court held the following: (1) the Defendants could not breach due process because they were not "state actors or acting under color of law," dismissing Gonzalez's due process claim, (2) Defendants did not violate the Deed of Trust or Texas law by not providing a payoff amount to Gonzalez because Gonzalez had not alleged or provided "any evidence that it was entitled to receive a payoff amount or any other notice sufficient to survive summary judgment," (3) even if Gonzalez was entitled to a payoff amount, its claim failed because it did not pay the amount or demonstrate it was prepared to pay it, (4) Gonzalez provided "no basis for questioning the propriety of the [payoff] amount," (5) Gonzalez did not state "a proper cause of action it might be able to sustain against Defendants for making an incorrect or misleading statement characterizing a debt," and (6) Gonzalez's "Truth in Lending Act and [12 C.F.R. § 1026.36(c)]" claim failed because Gonzalez did not qualify as a "consumer" or as a "person acting on behalf of [a] consumer" and the case did not involve "consumer credit." Docket no. 19 at 6-10.

4

On June 23, 2015, Plaintiff filed a Motion for New Trial pursuant to Federal Rule of Civil Procedure 59.[3]  Docket no. 22.  Defendants responded on July 7, 2015.  Docket no. 23.

## STANDARD OF REVIEW

The Federal Rules of Civil Procedure allow for a "motion to alter or amend a judgment." FED. R. CIV. P. 59(e).  A Rule 59(e) motion "calls into question the correctness of a judgment." *Templet v. Hydrochem, Inc.*, 367 F.3d 473, 479 (5th Cir. 2004); *In re Transtexas Gas Corp.*, 303 F.3d 571, 581 (5th Cir. 2002).   There are three grounds for altering or amending a judgment under a Rule 59(e) motion: (1) to correct a manifest error of law or fact, (2) to account for newly discovered evidence, or (3) to accommodate an intervening change in the controlling law. *Schiller v. Physicians Resource Group Inc.*, 342 F.3d 563, 567 (5th Cir. 2003) (internal quotations omitted).  A Rule 59(e) motion "is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment." *Templet*, 367 F.3d at 478–79; *see also Alvarado v. Tex. Rangers*, No. EP-03-CA-0305-FM, 2005 WL 1420846, at *2 (W.D. Tex. June 14, 2005) ("A Rule 59(e) motion is not proper to re-litigate matters that have been resolved to the movant's dissatisfaction and plaintiff cannot have a 'second bite at the apple' on the same issues that were previously addressed by the parties and [the] Court.")  Thus, a Rule 59(e) motion to alter or amend a judgment is an "extraordinary remedy" used only sparingly by the courts.  *Templet*, 367 F.3d at 479.

---

[3] This motion was styled as a motion for a new trial pursuant to Federal Rule of Civil Procedure 59(a).  Rule 59(a) permits the district court to grant a new trial on all or some of the issues as follows: (1) after a jury trial, and (2) after a nonjury trial.  FED. R. CIV. P. 59(a).  After a nonjury trial, the court may, on motion for a new trial, open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new ones, and direct the entry of a new judgment.  *Id.*  Rule 59(a) is not the proper subsection of the rule in which to challenge the court's prior order in this action because no trial ever took place.  The plaintiff is asking the Court to alter or amend its judgment, therefore this motion is more appropriate under Rule 59(e) and the court will treat the motion accordingly.

## ANALYSIS

Gonzalez argues the Court made a "manifest error of law in its ruling regarding its 'entitlement' to receive a payoff amount." Docket no. 22 at 2. More specifically, Gonzalez contends that the Court deprived Gonzalez of its "right to equity of redemption." *Id*. Gonzalez also argues there exists a "genuine issue of material fact" regarding the "validity" of the payoff amount received from Defendants, making the grant of summary judgment by the Court a manifest mistake of law. *Id*. at 5. Gonzalez does not present any newly discovered evidence to support this motion, relies only on the evidence previously submitted, and does not argue that there has been an intervening change in the controlling law. *Id*. The Court will take up the second argument first; then it will address the "right to equity of redemption" argument.

### (a) Genuine issue of material fact on payoff amount

Gonzalez's "fact issue" argument parallels the argument used in its response to the Defendants' motion for summary judgment. *Compare* docket no. 18 at 7, ("Further there is a dispute regarding the actual amounts owed under the note and have stated several numbers between $176,800.00 to $262,092.60. Therefore a fact issue remains as to the amounts owed under the note."), *with* docket no. 22 at 5 ("[Gonzalez] further raised a genuine issue of fact as to the validity of the payoff received from Counsel of Defendants in the amount of $262,000.00 in comparison with the $200,000.00 payoff amount represented by Defendants' agent"). The Court addressed this "fact issue" in its previous Order, stating "Gonzalez offers no evidence that $262,092.60 is incorrect other than pure conjecture that does not create an issue of fact." Docket no. 19 at 8.

Gonzalez does not offer any newly discovered evidence on the matter. It only points to evidence already examined by the Court in the motion for summary judgment by Defendants.

6

Docket no. 22 at 5.  Gonzalez is attempting to rehash a previous argument and gain a "second bite at the apple."  *See Alvarado*, 2005 WL 1420846 at *2.  Therefore, the "discrepancy" in payoff amounts provided by Defendants does not compel the Court to use the "extraordinary remedy" of a motion to alter or amend a judgment.  *Templet*, 367 F.3d at 479.

Still the Court will re-examine the alleged "genuine issue of material fact."  Again, the Court does not find Gonzalez's argument compelling.  For a court to conclude that there are no genuine issues of material fact, the court must be satisfied that no reasonable trier of fact could have found for the nonmovant, or, put differently, that the evidence favoring the nonmovant is insufficient to enable a reasonable jury to return a verdict for the nonmovant.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n.4 (1986); *Lavespere v. Niagra Machine & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir. 1990), *cert. denied*, 510 U.S. 859 (1993). In making this determination, the court should review all the evidence in the record, drawing all reasonable inferences in favor of the nonmovant and without making credibility determinations or weighing the evidence.  *Lytle v. Household Mfg., Inc.,* 494 U.S. 545, 554-555 (1990).  The court also considers "evidence supporting the moving party that is uncontradicted and unimpeached." *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 151 (2000).

When it previously reviewed the evidence presented, the Court made no credibility determinations and did not weigh the evidence, and it does not here.  The Defendants' presented Gonzalez with a letter that explicitly stated a "payoff amount" and set a deadline for when the payoff amount was due.  *See* docket no. 9-7.  Gonzalez argues that a "genuine issue of material fact" exists because there is a "discrepancy" between the payoff amount received in the letter from Defendants' and the "payoff amount represented by Defendants' agent at the December 2014 Bexar County foreclosure sale."  Docket no. 22 at 5.  Gonzalez's own evidence does not

even indicate that anyone at the foreclosure sale "represented" a payoff amount.  *See* docket no. 18-1 at 2 ("[Manager of Gonzalez] asked [the substitute trustee] what *defendants' minimum and maximum bid* was directed on this property [and] she indicated $201,000.") (emphasis added). Gonzalez did not receive a "representation" of a payoff amount at the foreclosure sale.  Gonzalez received a letter explicitly defining the *payoff amount* and Gonzalez presents no evidence that multiple *payoff amounts* were represented to it.  The Court finds that there is no genuine issue of material fact with regard to the payoff amount provided to Gonzalez.  The Court's previous findings were correct, not a manifest error of law.

### (b) Equitable right of redemption

Gonzalez argues that the Court made "a manifest error of law" regarding Gonzalez's "entitlement" to receive a payoff amount.  Docket no. 22 at 2.  As a result, "[t]he Court's Summary Judgment analysis . . . deprived [Gonzalez] of its right to equity of redemption."  *Id.* Gonzalez never indicated that cause of action in its complaint or argued that it retained an "equity right of redemption" in its response to the Defendants' motion for summary judgment. *See generally* docket no. 18.  Instead, Gonzalez went on at length on a meritless and confusing "Truth in Lending and [12 C.F.R. § 1026.36(c)]" argument.  Gonzalez does not argue presently that the Court made a manifest error of law when addressing the "Truth in Lending and [12 C.F.R. § 1026.36(c)]" argument or when the "Court concluded Gonzalez was neither a party to the Deed of Trust nor had it properly assumed the position of the borrower after purchasing an interest in the Property from the HOA."  Docket no. 22 at 2.

The Court, also properly concluded in its previous order that Gonzalez was not "entitled to receive a payoff amount or any other notice sufficient to survive summary judgment."  Docket no. 19 at 7.  The Court properly found that a junior lienholder had no right to a payoff amount,

*citing Sanders v. Shelton*, 970 S.W.2d 721, 726-27 (Tex. App.—Austin 1998, no pet.) ("[W]e hold that the Trustee owed no duty to [a different debtor than a mortgagor with an interest in the property] to provide information regarding the payoff amount of the underlying obligation.") and *402 Lone Star Prop., LLC v. Bank of Am., N.A.*, No. 03-13-00322-CV, 2014 WL 4058715, at *2 (Tex. App.—Austin Aug. 12, 2014) (holding that nothing in the Property Code entitled a junior lienholder to a payoff amount prior to foreclosure).  In an alternative holding, the Court found the Defendants gave a payoff amount but that Gonzalez failed to respond, demonstrating that Gonzalez was not ready, able, or willing to assert its right to equity of redemption.  Docket no. 19 at 8.

Gonzalez now argues it is entitled to receive a payoff amount because it retains the "right to equity of redemption."  Docket no. 22 at 2.  Gonzalez provides no new evidence to support this theory and does not point to a change in the controlling law.  Gonzalez attempts to use this motion for reconsideration as a way to rehash "evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment."  *Templet*, 367 F.3d at 478–79.  Thus, Gonzalez's attempt to argue the "right to equity of redemption" is not subject to the "extraordinary remedy" of a Rule 59(e) motion. However, for the sake of completeness, the Court will analyze Gonzalez's claim that the Court deprived it of its "inherent right" to equity of redemption.

To enforce a right to equity of redemption, it is necessary to sue for that purpose and to plead equities that would authorize such recovery.  *See Parks v. Worthington*, 87 S.W. 720, 721 (1905) (holding that action of trespass to try title did not show "such equities as will authorize [the plaintiff] to redeem" the plaintiff's right to equity of redemption).  However, courts have not stated how explicit the pleadings have to be with regard to suing for the purpose of the right to

equity of redemption.  *See Elbar Investments, Inc. v. Wilkinson*, No. 14-99-00297-CV, 2003 WL 22176624, at *1 (Tex. App.—Houston [14th Dist.] Sept. 23, 2003) (addressing the issue of the right to equity of redemption even though the "plaintiff brought suit seeking declaratory relief to obtain title and damages for conspiracy").

Gonzalez's petition never explicitly argued for the "right to equity of redemption."  *See* docket no. 1-1 at ¶¶ 9-14.  The face of the petition does not include that cause of action. Gonzalez again failed to explicitly argue for the right to equity of redemption in its response to Defendants' motion for summary judgment.  *See* docket no. 18.  However, Gonzalez did state in its original complaint that it needed a temporary restraining order to "stop the [Defendants'] foreclosure sale [of the Property] in order to get the payoff amount to pay the note to avoid foreclosure."  Docket no. 1-1 at 10.  This vague statement may satisfy the requirement that Gonzalez "plead such equities" as will authorize it to redeem under a right to equity of redemption, so the Court will again analyze the cause of action as if it was properly plead.

To enforce the right to equity of redemption, "a party must (1) prove that he has a legal or equitable interest in the property subject to the mortgage; (2) prove that he is 'ready, able, or willing to redeem the properties in controversy by paying off the amount of valid and subsisting liens to which the properties [are] subject'; and (3) assert the claim before a foreclosure sale because the equity of redemption terminates once a foreclosure sale occurs."  *Elbar*, 2003 WL 22176624, at *3.

The second element of *Elbar* requires that Gonzalez "prove that [it] is ready, able, or willing to redeem the properties in controversy by paying off the amount of valid and subsisting liens to which the properties [are] subject."  2003 WL 22176624 at *3 (internal quotations omitted).  Generally, this means that the junior lienholder must tender the amount due or else

waive the right to equity of redemption. *Id*. at \*4 ("The trial court properly found that [junior lienholder] did not have an equitable right of redemption. [Junior lienholder] acknowledged at trial that it had not paid any amount to satisfy the first lien; this failure constitutes a waiver of any equitable remedy."); *see also Post Oak Trust v. PennyMac Loan Servs., LLC*, No. 4:15CV102, 2015 WL 4102163, at \*4 (E.D. Tex. July 6, 2015) ("Because [plaintiff] has not tendered money to discharge [defendant's] lien on the [property], [plantiff's] claim for equitable redemption fails."); *330 Cedron Trust v. Citimortgage, Inc.*, No. SA-14-CV-933-XR, 2015 WL 1566058, at \*3 (W.D. Tex. Apr. 8, 2015) ("However, a party waives its right to redemption if it has not paid any amount to satisfy the first lien.") (internal quotations omitted).

Gonzalez's "right to equity of redemption" claim fails on the second element. Gonzalez never tendered any payment on any payoff amount and does not argue or present evidence that it did. *See generally* docket no. 18, 22. As the Court stated in the Order, Gonzalez "had more than 20 days to pay the [payoff amount]" and did not pay or demonstrate that it is prepared to pay the payoff amount. Docket no. 19 at 8. Gonzalez presents no evidence that this has changed. Gonzalez argues that it stood "ready, able, or willing to redeem the properties in controversy" but for the "discrepancy between the price offered for the property at foreclosure compared with the undetailed and excessive payoff provided by counsel for Defendants." Docket no. 22 at 2-3. But Gonzalez never paid or demonstrated it was prepared to pay *any* payoff amount, even its proffered lower amount. It apparently has not paid any amount to the senior lienholder since "acquiring" the Property. Since the previous Order granting summary judgment, another federal district court in Texas has held that a similar failure to respond to a payoff amount was ample ground for summary judgment. *Post Oak Trust v. PennyMac Loan Servs., LLC*, No. 4:15CV102, 2015 WL 4102163, at \*4 (E.D. Tex. July 6, 2015). Therefore, Gonzalez waived its right to

equity of redemption and Gonzalez's argument that it stood "ready, willing, and able" to pay off the superior lien is incorrect.

Gonzalez confusingly argues that the use of the word "valid" in *Elbar* means that it can question the validity of the payoff amount provided by Defendants.  Docket no. 22 at 5; *Elbar*, 2003 WL 22176624 at *3 ("ready, able or willing to redeem the properties in controversy by paying off the amount of *valid* and subsisting liens to which the properties [are] subject") (emphasis added).  Gonzalez states that his questioning of the payoff amount is the reason it appears not ready, willing, and able to pay the superior lien.  Docket no. 22 at 3.  It argues if there was no "discrepancy," it would have paid.  It appears Gonzalez believes this creates a "fact issue to be determined" about his "ready, willing, and able[ness]."  *Id*.

First, it is not clear where this interpretation of the use of "invalid" in *Elbar* comes from. The word valid in *Elbar* is referring to the lien, not the payoff amount, and even if it was referring to the payoff amount, that sentence could not be used as the basis for an entire lawsuit because a junior lienholder believes payoff amount it is quoted by a senior lienholder is too much.  Nothing in *Elbar*, subsequent case law, or the Deed of Trust indicates that a junior lienholder can question the validity of a payoff amount provided by a senior lienholder through an affidavit from the plaintiff claiming he was told the bids on the property at the foreclosure sale were lower than a payoff amount the defendant provided.

Second, even if this did create a fact issue, it would not be a material one that would have saved his petition from summary judgment.  In *Elbar*, the court held that "[a]s a general rule, only the mortgagor or parties in privity with the mortgagor may contest the validity of a foreclosure sale under the mortgagor's deed of trust."  2003 WL 22176624 at *2 (citing *Estelle v. Hart*, 55 S.W.2d 510, 513 (Tex. Comm'n App. 1932)).  "A subsequent purchaser or junior

lienholder may collaterally attack the sale only if it is entirely void." *Id.* "A party having no privity with the mortgagor may not complain of irregularities that would render the sale merely voidable, including complaints regarding the manner of notice." *Id.* The court defined "void" as meaning "the sale has no legal efficacy and is incapable of being enforced by law, such as a foreclosure sale of a lien not in default" and "voidable" as meaning "a sale that may be avoided, but is not until the fatal vice in the transaction has been judicially ascertained and declared." *Id.* at *5 n.1 (internal quotations omitted).

The "discrepancy" in payoff amounts, discussed as an issue of material fact, would only make the foreclosure voidable, not void.  Because the foreclosure sale is merely voidable, Gonzalez has no privity with the mortgagor and thus "may not complain of irregularities that would render the sale merely voidable." *See Elbar*, 2003 WL 22176624 at *2; *W & L Ventures, Inc. v. E. W. Bank*, No. CIV.A. H-13-00754, 2014 WL 1248157, at *6 (S.D. Tex. Mar. 26, 2014); *Granato v. Deutsche Bank Nat. Trust Co.*, No. SA-13-CV-417-DAE, 2013 WL 5839326, at *5 (W.D. Tex. Oct. 29, 2013).

Gonzalez's motion to reconsider only rehashes arguments that were addressed in the Order, raises arguments that were available before the entry of judgment,[4] and does not provide any compelling reasons that a manifest error of law has been committed by the Court.  The motion is denied.

## CONCLUSION

For the above reasons, the Court DENIES Defendant's "motion for new trial."  (docket no. 22).

It is so ORDERED.

---

[4] Although these arguments are as legally incorrect now as they would have been before the entry of judgment.

13

SIGNED this 24th day of July, 2015.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE